# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Silver iPhone Cellular Phone<br>Case Number: SYS-24-07-0592<br>("Target Device") | Case No. '24 MJ3079 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of CBP Officer Adriana A. Burns, U.S. Customs and Border Protection, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Adriana A. Burns, U.S. Customs and Border Protection
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____ *(specify reliable electronic means)*.

Date: 08/13/2024

*Judge's signature*

City and state: San Diego, California    Hon. Barbara L. Major, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The following property is to be searched:

      Silver iPhone Cellular Phone

      Case Number: SYS-24-07-0592

      (" **Target Device** ")

**Target Device** is currently in the custody of the Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of July 11, 2024 to July 26, 2024:

    a.    tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c.    tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d.    tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.

# AFFIDAVIT

I, Adriana A. Burns, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

> Silver iPhone Cellular Phone
> Case Number: SYS-24-07-0592
> ("**Target Device**")

as further described in Attachment A and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Raul Alejandro MUNOZ-Romero (D1) and Jesus Ivan RIOS (D2) for conspiracy to bring in aliens, aiding and abetting, and bringing in aliens into the United States for financial gain. The **Target Device** is currently in the custody of Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by U.S. Customs and Border Protection since 2008 and am currently assigned to the San Ysidro Criminal Enforcement Unit. I graduated from the CBP Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for sixteen

1

years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a CBP Officer, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point

operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on

their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

11. On July 26, 2024, at approximately 8:00 A.M., Edwin Aaron AHUMADA-Lopez, a United States citizen, applied for entry into the United States at the San Ysidro Port of Entry through vehicle primary lane twelve. AHUMADA was the sole visible occupant of a gray Lexus IS 250 sedan bearing California license plates.

12. At primary inspection, a United States Customs and Border Protection Officer (CBPO) asked AHUMADA where he was going, and AHUMADA stated he was headed

4

to San Diego, California. AHUMADA provided two negative customs declarations. The CBPO released AHUMADA and the vehicle from the booth.

13. The following vehicle, a silver Acura TL, produced a computer-generated alert. However, the CBPO believed it was on AHUMDA's vehicle, Lexus IS 250, and suppressed the port runner button at the booth and radioed for assistance from secondary officers. A Secondary Officer responded and escorted AHUMDA and his vehicle to secondary for further inspection.

14. At secondary inspection, AHUMADA drove the vehicle through the Z-portal. A CBPO operating the Z-portal observed anomalies in the trunk of AHUMADA's vehicle and radioed for assistance. CBPOs responded and opened the trunk of AHUMADA's vehicle discovering four individuals concealed within. AHUMADA was arrested and subsequently charged in a separate criminal complaint (24MJ2893).

15. CBPOs assisted and removed the four individuals from AHUMADA's vehicle trunk. The individuals were later identified as Faustino HERNANDEZ-Lopez, Rita ORTIZ-Flores, Maria Pueblito LEDESMA-Ledesma, and E.A.A.L. All four individuals stated they were citizens of Mexico and did not possess immigration documents to lawfully enter or remain in the United States. All four individuals are now being held as Material Witnesses in the separate criminal complaint against AHUMADA (24MJ2893).

16. The vehicle directly behind AHUMADA, was identified as a silver Acura TL with Raul Alejandro MUNOZ-Romero (D1) and Jesus Ivan RIOS (D2) as the sole occupants. MUNOZ (D1) was the front passenger being driven by RIOS (D2). The Acura TL produced a computer-generated alert.

17. The primary CBPO realized after suppressing the port runner button that it was not a delayed alert on AHUMADA's vehicle, but a computer-generated alert on the Acura TL occupied by MUNOZ (D1) and RIOS (D2). The primary CBPO subsequently referred MUNOZ (D1) and RIOS (D2) to vehicle secondary for the computer-generated alert. CBPOs released MUNOZ (D1), RIOS (D2), and the Acura TL unbeknownst that MUNOZ (D1) and RIOS (D2) were involved in the smuggling event with AHUMADA.

5

Database queries revealed MUNOZ (D1) and RIOS (D2) returned to Mexico six minutes after being released.

18.  After MUNOZ (D1) and RIOS (D2) were released from secondary inspection, agents learned of MUNOZ (D1) and RIOS' (D2) association to AHUMADA. Agents quickly reviewed the video footage of MUNOZ (D1) and RIOS (D2) in secondary inspection. On the video, RIOS (D2) can be seen looking toward AHUMADA's vehicle while AHUMADA's vehicle was in vehicle secondary. TECS queries revealed AHUMADA had previously traveled with RIOS (D2) seven times in the same vehicle, and three of those occasions in AHUMADA's Lexus IS 250.

19.  All Material Witnesses from AHUMADA's vehicle were shown six-pack photographic line ups of AHUMADA, MUNOZ (D1), and RIOS (D2) along with the vehicle secondary area video footage depicting MUNOZ (D1) and RIOS (D2).

20.  During a video recorded interview, HERNANDEZ stated he is a citizen of Mexico without legal documents to enter or reside in the United States. HERNANDEZ stated he made the smuggling arrangements with an unknown smuggler for approximately $10,000 USD fee each for himself and his wife, ORTIZ. HERNANDEZ stated he intended to go to Santa Maria, California. HERNANDEZ positively identified MUNOZ (D1) in a six-pack photographic line up, and stated he was the individual who placed them in the trunk and told them to be quiet. HERNANDEZ stated MUNOZ (D1) picked him up along with his wife from a hotel driving a gray four-door sedan, to transport them to a house where they were placed in the trunk of another vehicle. HERNANDEZ recognized MUNOZ (D1) from the vehicle secondary video footage shown to him. HERNANDEZ stated he was wearing the same outfit as in the video, including the same green Mexico jersey.

21.  During a video recorded interview, ORTIZ stated she is a citizen of Mexico without legal documents to enter or reside in the United States. ORTIZ stated her husband, HERNANDEZ, made the smuggling arrangements with an unknown smuggler for approximately $10,000 USD fee for each of them. ORTIZ stated she intended to go to

Santa Maria, California. ORTIZ recognized both MUNOZ (D1) and RIOS (D2) from the vehicle secondary video footage shown to her. ORTIZ stated both subjects were the ones who transported them to the area where they were eventually loaded into the trunk of the vehicle.

22.  During a video recorded interview, LEDESMA stated she and her minor son, E.A.A.L., are citizens of Mexico without legal documents to enter or reside in the United States. LEDESMA stated she made the smuggling arrangements with an unknown smuggler for her and E.A.A.L. for a combined fee of $22,000 USD. LEDESMA stated she and E.A.A.L. intended to go to Escondido, California. LEDESMA recognized MUNOZ (D1) from the vehicle secondary video footage shown to her by what he was wearing. LEDESMA stated MUNOZ (D1) placed them in the trunk.

23.  E.A.A.L. positively identified MUNOZ (D1) in a six-pack photographic line up, and stated he was the individual who placed them in the trunk and told them not to talk or move while in the trunk. Prior to crossing, E.A.A.L. stated MUNOZ (D1) placed them in a trunk of a different car to see if they would fit. E.A.A.L. stated he remembered MUNOZ (D1) was wearing a Mexico soccer jersey and black shorts. E.A.A.L. was also shown the vehicle secondary video footage and recognized MUNOZ (D1), and what he was wearing. E.A.A.L. also recognized RIOS (D2) from his black shirt, his hair style, and the gold chain he was wearing. E.A.A.L. stated the vehicle MUNOZ (D1) and RIOS (D2) were driving was the car used to place them in the trunk to see if they would fit. E.A.A.L. stated while in the trunk, he overheard the driver of the vehicle, AHUMADA, talking on speaker phone with MUNOZ (D1). E.A.A.L stated he knew the person AHUMADA was talking to over speaker phone was MUNOZ (D1) because he recognized his voice from prior interactions. E.A.A.L. stated MUNOZ (D1) told AHUMADA he was crossing behind them in a separate vehicle, and to stay in their current lane because they would cross faster, and it was a more direct path.

24.  On July 30, 2024, RIOS (D2) was apprehended at the Otay Mesa Port of Entry. The **Target Device** was discovered in RIOS' (D2) left pant pocket at the time of his

7

arrest. During the interview for biographical information, RIOS (D2) claimed ownership of the **Target Device** and it was subsequently seized.

25. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the **Target Device** to communicate with others to further the smuggling of illegal aliens into the United States. Further, in my training and experience, alien smugglers may be involved in the planning and coordination of transporting and smuggling events in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the aliens. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on July 11, 2024, up to and including July 26, 2024.

## METHODOLOGY

26. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones, tablets, and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a

secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

26. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

27. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

28. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//
//
//
//

9

**CONCLUSION**

29. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

30. Because the **Target Device** was seized at the time of Defendant's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from July 11, 2024, through July 26, 2024.

31. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.



_____
Adriana A. Burns, CBP Officer

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 13th of August, 2024.

_____
HON. BARBARA L. MAJOR
United States Magistrate Judge